UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | CASE NO.: 5:24CV1520 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN ADAMS |
| | ) | |
| v. | ) | |
| | ) | |
| Mt. Hope Auction Co., | ) | |
| | ) | **ORDER** |
| Defendant. | ) | |
| | ) | |

Pending before the Court is the Government's motion for a temporary restraining order. Doc. 5. Defendant Mt. Hope Auction Co. has opposed the motion, and the Government has replied in support. This matter presents the Court with determining what is the proper course of action when an entity – Mt. Hope Auction Co. – has shown a repeated disregard for the health and well-being of the animals in its care. Upon review of the law and appalling conditions represented in the documentary evidence, the motion is GRANTED.

Congress passed the Animal Welfare Act ("AWA") because it found it "essential to regulate… the transportation, purchase, sale, housing, care, handling, and treatment of animals by carriers or by persons or organizations … holding them for sale as pets or for any such purpose or use." 7 U.S.C.A. § 2131. The Government seeks relief contending that Defendant is in violation of the AWA. In that regard, the AWA provides that the Secretary of Agriculture may apply for a temporary restraining order "[w]henever the Secretary has reason to believe that any dealer, carrier exhibitor, or intermediate handler ... is placing the health of any animal in serious danger in

violation of [the AWA]." 7 U.S.C. § 2159(a). Section 2159 continues: "[t]he court shall, upon proper showing, issue a temporary restraining order." *Id*. § 2159(b). Because the AWA mandates injunctive relief as a remedy for violation, "courts' traditional discretion to determine" injunctive relief under traditional equitable principles is "constrained." *First W. Cap. Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1141 (10th Cir. 2017). In that regard, an important distinction between preliminary relief issued pursuant to equitable principles and a statutorily-authorized TRO or injunction is a plaintiff "does not need to demonstrate irreparable harm." *Burlington N R.R. Co. v. Bair*, 957 F.2d 599, 601–02 (8th Cir. 1992). Rather than applying the traditional four-factor test, the Court's role here "is simply to determine whether a violation of the statute has or is about to occur." *Id*. Under the AWA, the Court must merely decide if a "proper showing" has been made to issue a TRO. 7 U.S.C. § 2159(b).

However, should the relief sought herein fall outside the statutory authority, the Court has its more traditional authority as authorized for the AWA through Section 2146. When determining whether to issue a temporary restraining order or preliminary injunction under this traditional authority, the Court considers four factors that govern its analysis: (1) whether the movant has shown a strong likelihood of success on the merits of the controversy, (2) whether the movant is likely to suffer irreparable harm without an injunction, (3) whether an injunction would cause substantial harm to others, and (4) whether an injunction would serve the public interest. *Workman v. Bredesen*, 486 F.3d 896, 905 (6th Cir. 2007).

A temporary restraining order, however, is an "extraordinary remedy," *Hacker v. Fed. Bureau of Prisons*, 450 F. Supp. 2d 705, 710 (E.D. Mich. 2006), and the movant must establish that "the circumstances clearly demand it," *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citation omitted). The four factors generally ought "to be

balanced against one another and should not be considered prerequisites to the grant" of a temporary restraining order. *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000) (citations omitted). When the Court is able to determine the propriety of a temporary restraining order by relying on fewer than all four factors, it may do so. *See Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) ("The district judge 'is not required to make specific findings concerning each of the four factors used in determining a motion for preliminary injunction if fewer factors are dispositive of the issue.'" (quotation omitted)); *Mascio v. Pub. Emps. Ret. Sys. of Ohio*, 160 F.3d 310, 315 (6th Cir. 1998) (affirming the district court's issuance of a preliminary injunction based on the district court's conclusion that the plaintiff showed a likelihood of success on the merits).

In its opposition, Defendant initially contends that Section 2159 is inapplicable to these proceedings because it is an operator of an auction sale, an entity separately defined by the AWA that is not included in the terminology of Section 2159. Upon review, the Court has found no precedent to address the argument raised by Defendant. However, the Court need not formally resolve whether Section 2159 specifically authorizes injunctive relief[1] because the Court has the authority to issue relief under Section 2146 which provides: "The United States district courts … are vested with jurisdiction specifically to enforce, and to prevent and restrain violations of this chapter, *and shall have jurisdiction in all other kinds of cases arising under this chapter*, except

---

1 Notably, "dealer" is defined under the AWA as "any person who, in commerce, for compensation or profit, delivers for transportation, or transports, except as a carrier, buys, or sells, or negotiates the purchase or sale of: Any dog or other animal whether alive or dead (including unborn animals, organs, limbs, blood, serum, or other parts) for research, teaching, testing, experimentation, exhibition, or use as a pet." 9 C.F.R. § 1.1. As such, it appears under the plain language of the definition provided for "dealer" that the operator of an auction sale is *also* considered a dealer under the AWA. Accordingly, it appears as though the Court has authority to enjoin under Section 2159.

as provided in section 2149(c) of this title." 7 U.S.C. § 2146(c)(emphasis added). Thus, Congress intended for district courts to have broad injunctive relief power under the AWA.

Defendant appears to suggest that because the Secretary *may* impose civil penalties and that an alleged violator can utilize an administrative process and eventually seek relief in a district court that the Secretary *must* utilize those procedures and is unable to seek injunctive relief absent invoking those procedures. Nothing in the statutory text supports such an argument and given the urgency that could easily arise from violations of the AWA, the Court declines to impose such an impediment to relief.

Having found that this Court has the authority and jurisdiction to issue relief, the Court reviews the traditional four factors to determine whether relief is warranted. Notably, Defendant has not argued *any* of the four factors, instead relying upon jurisdictional and procedural arguments. Thus, Defendant has waived any argument that the four factors have not been satisfied. Nevertheless, the Court will review the factors before determining whether relief is warranted.

1. **Likelihood of Success on the Merits**

Upon review of the substantial evidence, including videos and photographs, the Court agrees with the Government that Defendant's practices have placed the health of numerous animals in serious dangers. The following is just a sampling of the health dangers created or existing:

▪ Sugar glider transport enclosures with solid bottoms that allow fecal matter and urine to drip on cages below.

▪ Cages that allow Bar-headed geese to fit their beaks through bars, resulting in such severe scraping that one goose bled so much that its chest feathers were smeared with blood.

▪ An enclosure with a gap large enough that a white-tailed deer had its leg become trapped between the gate and wall of the enclosure.

▪ An enclosure so small that a peacock's tail could only stick out through the rear of the cage, thereby eliminating almost any ability for the animal to move.

▪ A recent inspection revealed 34 enclosures with an excessive accumulation of brownish-black excrement.

▪ Defendant took no steps to install or maintain barriers to prevent the public from touching animals without regard to the illness, injury, and stress that cannot be created by these unsupervised interactions.

▪ Defendant permitted the mishandling of an adult kangaroo by allowing an employee to grab and spin it by its tail.

▪ Perhaps most seriously of all, the videos and photographs submitted in support of injunctive reveal nearly 40 animals that exhibit *clear* signs of significant health issues. Several antelope were so emaciated that their bones prominently protruded through their hides. A water buffalo had an open sore on its forehead left untreated. A coatimundi has diarrhea scatted across its cages, including its food and water receptacles. Numerous animals were found with no access to water. Defendant's on-staff veterinarians has no recollection of treatment of nearly any of these animals.

Additionally, the below photographs are also a small sample illustrating animal conditions that had been untreated on site:

 A goat with an open wound on its left ear.


An emaciated nilgai.


Multiple underweight cattle.


A donkey with substantial hair loss on its head.


Senegal parrots with feather loss on their heads.

 Overgrown hooves on a zebu.

Based upon the above, the Government has a shown a substantial likelihood of success on the merits of its claims that Defendant is violating the AWA. Accordingly, this factor weighs in favor of ordering relief.

2. **Irreparable Harm**

The Court finds that the harm to the animals detailed above and throughout the photographs and videos filed herein is more than sufficient to demonstrate irreparable harm. *See, e.g. .United States v. Lowe*, No. 20-CV-0423-JFH, 2021 WL 149838, at *14 (E.D. Okla. Jan. 15, 2021)( Defendants' habit, pattern, and practice of providing inadequate nutrition and timely veterinary care…indicate to the Court that the health and safety of the animals remaining in Defendants' care continues to be at risk of irreparable harm absent injunctive relief.").

3. **Harm to Others**

Injunctive relief will not cause harm to others in any capacity as the relief sought does little more than allow more access to Defendant's facilities and records in an effort to safeguard the health of the animals. Moreover, Defendant effectively concedes that a vast majority of the relief sought by the Government amounts to simply compliance with the AWA standards. As such, any burden imposed on Defendant is minimal, at most.

4. **Public Interest**

There is an overwhelming public interest in ensuring that animals are given the proper care

to ensure their safety and health.² Further, there is a strong public interest in having citizens follow the law. Accordingly, this factor also supports relief.

**Conclusion**

Each of the factors above support awarding relief. Defendant, however, contends that the relief sought by the Government amounts to nothing more than an injunction that says, "Comply with the law." Defendant, therefore, contends that such relief is improper. While there are certain general components of the relief sought that could be construed as requiring general compliance, Defendant concedes, as it must, that the sought relief extends beyond the general provisions of the AWA. The relief expands access to Defendants' facilities and places deadlines for compliance with certain tasks – items beyond what the AWA alone would provide. As such, the relief is proper.

Defendant also seeks some form of clarification that the Government's access will be limited to only those animals covered by the AWA. Defendant raises this argument while suggesting that the Government has improperly expanding the AWA in some manner to broaden its enforcement powers. However, the Court is not in a position to evaluate this claim, which is unsupported by any documentary evidence. Moreover, the Court is not inclined to attempt to place restrictions on the Government's access. The deplorable conditions set forth in the images presented to the Court countenance against any approach that may result in an animal somehow evading inspection and thereby placing its health at risk.³

---

2 Moreover, eliminating Defendant's violations that include allowing the public to directly interact with the animals will also serve to increase public safety.
3 As highlighted by Defendant, if the Government were to impose any form of civil penalty on an animal that Defendant believes does not fall under the AWA, there is an administrative process to review such an argument.

Accordingly, the Government's request for a temporary restraining order is hereby GRANTED.

For a period of 14 days from the date of this order, it is ORDERED that Mt. Hope, its agents, servants, employees, and those working in active concert with it, are to:

1. Comply with 9 C.F.R. § 2.40 by ensuring that all animals – meaning all mammals or birds -- present at its Alternative Animal Auctions are provided with adequate veterinary care, including daily observations to assess their health and well-being and the use of appropriate methods to prevent, control, diagnose, and treat diseases and injuries;

2. Maintain complete and legible written veterinary records for any animal assessed or provided treatment under paragraph (1) above, as well as veterinary records of any animal that dies at any Alternative Animal Auction; ensure that such records are available for review upon request by a USDA inspector; and provide copies of those records to undersigned counsel for the United States within five business days of the last day of any Alternative Animal Auction for which such records were maintained;

3. Create and maintain accurate and complete records for all consignments and sales of animals, as required by 9 C.F.R. § 2.76(a), and provide copies of those records to counsel for the United States within five business days of the last day of any Alternative Animal Auction at which those consignments or sales occurred;

4. Comply with 9 C.F.R. § 2.132(d) by ensuring that no animal is accepted for consignment from an individual who is required to hold a valid USDA license but does not have one;

5.      Ensure that the handling of all animals is done as carefully and expeditiously as possible and that appropriate measures are taken to alleviate any impact of climatic conditions that present a threat to an animal's health or well-being, consistent with 9 C.F.R. § 2.131(b)(1),(e);

6.      Comply with 9 C.F.R. § 2.131(c)(1) and (d)(2) by maintaining sufficient distance and/or barriers between animals at the Alternative Animal Auction and the general viewing public and ensuring no public access for contact with such animals unless there is a responsible, knowledgeable, readily identifiable employee or facility attendant present;

7.      Ensure that all animals at the Alternative Animal Auction are held in facilities or enclosures that are sanitary, in good repair, appropriately stored, and meet all minimum standards required by 9 C.F.R. §§ 3.36, 3.61, 3.63, 3.66(c), 3.87, 3.125(a), 3.131(a), (c), 3.137, and 3.162, and ensure that all animals are housed compatibly in accordance with 9 C.F.R. § 3.133; and

8.      Allow USDA inspectors access to Mt. Hope facilities, animals, and records, without interference, threats, or harassment during any business hours, including all days of the Alternative Animal Auction, any days prior to the Auction when consignment of animals is allowed, and for five days after the last day of the Auction to review final records and inspect any remaining animals pursuant to 7 U.S.C. §§ 2140, 2146(a) and 9 C.F.R. §§ 2.126(a), 2.4.

IT IS SO ORDERED.

September 13, 2024                                   /s/ John R. Adams
                                                     JUDGE JOHN R. ADAMS
                                                     UNITED STATES DISTRICT JUDGE