IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CASE NO.: 5:24-cv-01520 |
| Plaintiff, | ) Judge John R. Adams |
| v. | ) Magistrate Judge Carmen E. Henderson |
| MT. HOPE AUCTION CO., | ) **CONSENT DECREE** |
| Defendant. | ) |

    This Consent Decree is entered into by and between Plaintiff, the United States of America ("United States"), and Defendant, Mt. Hope Auction Co. ("Mt. Hope") (collectively, the "Parties"), who state as follows:

    WHEREAS, Mt. Hope held a Class B "dealer" license, number 31-B-0031, issued by the United States Department of Agriculture ("USDA") until it expired on September 30, 2024;

    WHEREAS, on September 6, 2024, the United States filed a complaint against Mt. Hope, alleging violations of the Animal Welfare Act ("AWA"), and its implementing regulations and standards and seeking preliminary and permanent injunctive relief, ECF No. 1 ("Complaint");

    WHEREAS, the Complaint alleged pursuant to 7 U.S.C. § 2159 that Mt. Hope has placed the health of animals in serious danger in violation of the AWA and its regulations and standards at its Alternative Animal and Bird Sale auctions ("Alternative Animal Auctions"). The Complaint also alleged pursuant to 7 U.S.C. § 2146(c) that Mt. Hope had violated the AWA and its regulations and standards in the following ways: (1) Mt. Hope has failed to provide adequate

1

veterinary care; (2) Mt. Hope has failed to provide safe and hospitable housing conditions; (3) Mt. Hope has used and failed to prevent the use of dangerous handling practices; (4) Mt. Hope has failed to create and maintain complete and accurate records; and (5) Mt. Hope has facilitated the illegal procurement of animals;

WHEREAS, on September 6, 2024, the United States moved for a temporary restraining order and preliminary injunction to prevent Mt. Hope from placing the health of animals in serious danger and violating the AWA and its regulations and standards at future Alternative Animal Auctions, including the Alternative Animal Auction scheduled for September 19-21, 2024;

WHEREAS, on September 13, 2024, the Court granted the United States' motion for a temporary restraining order and ordered, for a period of fourteen days, that Mt. Hope comply with the AWA and its regulations and standards at its Alternative Animal Auctions by: providing adequate veterinary care; creating and maintaining accurate and complete records; ensuring that no animals are accepted for consignment from an individual who is required to hold a USDA license but does not have one; ensuring the handling of animals is done as carefully and expeditiously as possible; ensuring that there is not public access for contact with animals unless there is a responsible, knowledgeable, readily identifiable employee present; and ensuring that all facilities and enclosures are sanitary, in good repair, appropriately stored, and meet the minimum standards of the AWA. Additionally, the temporary restraining order required Mt. Hope, for a period of fourteen days, to create and maintain veterinary records for animals assessed or treated at the Alternative Animal Auctions, to provide veterinary records and consignment and sale records to the United States within five days following any Alternative Animal Auction, and to

allow USDA inspectors access to inspect Mt. Hope's facilities, animals, and records to ensure compliance with the order;

WHEREAS, Mt. Hope cancelled the Alternative Animal Auction scheduled for September 19-21, 2024;

WHEREAS, Mt. Hope failed to demonstrate compliance with the AWA and its regulations and standards at its second relicensing inspection, which occurred on September 23-25, 2024;

WHEREAS, Mt. Hope's license expired on September 30, 2024;

WHEREAS, Mt. Hope canceled the third relicensing inspection scheduled to begin on October 4, 2024, and its time period to pass a relicensing inspection has elapsed;

WHEREAS, pursuant to 9 C.F.R. § 2.3(d), Mt. Hope cannot reapply for a USDA license for 6 months following the expiration of the time to request a third inspection, which is April 5, 2025;

WHEREAS, in carrying out any site visit or inspection at Mt. Hope's facilities while Mt. Hope remains unlicensed, USDA officials and other personnel will endeavor to avoid any action unnecessary to their official duties which would disrupt any commercial activity of Mt. Hope or its patrons, and not harass or unreasonably interfere with Mt. Hope's facilities, animals, employees, or patrons. Notwithstanding anything herein, USDA shall at all times be permitted to take any action necessary or appropriate to conduct an inspection and/or determine whether Mt. Hope is engaged in AWA-regulated activity;

WHEREAS, the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

1. This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331 and 1345 and 7 U.S.C. § 2146(c) (actions arising under the AWA), and over the Parties. Venue lies in this District pursuant to 28 U.S.C. § 1391 because the Defendant, Mt. Hope, resides in this District and a substantial part of the alleged events or omissions giving rise to the claim occurred in this judicial district. For purposes of this Consent Decree, or any action to enforce this Consent Decree, Mt. Hope consents to the Court's jurisdiction over it, this Consent Decree, and any such action to enforce it, and to venue in this judicial district.

2. The obligations of this Consent Decree apply to and are binding upon the United States and upon Mt. Hope and any of its agents, employees, successors, assigns, or other entities or persons otherwise bound by law, directly or through any corporate or other device.

3. Mt. Hope shall provide a copy of this Consent Decree to all employees, officers, or agents whose duties might reasonably include compliance with any provision of this Consent Decree. In any action to enforce this Consent Decree, Mt. Hope shall not raise as a defense the failure to provide a copy of this Consent Decree to any employee, officer, or agent or the failure of any of the employees or agents to take any actions necessary to comply with the provisions of this Consent Decree.

4. For purposes of this agreement, the term "covered animal" shall mean any live or dead dog, cat, nonhuman primate, guinea pig, hamster, rabbit, or any other warmblooded animal, which is being used, or is intended for use for research,

4

teaching, testing, experimentation, or exhibition purposes, or as a pet. This term excludes birds, rats of the genus *Rattus,* and mice of the genus *Mus,* bred for use in research; horses not used for research purposes; and other farm animals[1], such as, but not limited to, livestock or poultry used or intended for use as food or fiber, or livestock or poultry used or intended for use for improving animal nutrition, breeding, management, or production efficiency, or for improving the quality of food or fiber. This term also excludes falconry. With respect to a dog, the term means all dogs, including those used for hunting, security, or breeding purposes. When the foregoing definition refers to an animal that "is being used, or is intended for use for research, teaching, testing, experimentation, or exhibition purposes, or as a pet" it includes, but is not limited to, (1) any animal knowingly offered by Mt. Hope for sale to exhibitors or dealers of AWA-regulated animals, or which Mt. Hope should have known was being offered for sale to such individuals with the exercise of reasonable diligence, and (2) any such animal which Mt. Hope exhibits or intends to exhibit for compensation to the public.

5. For purposes of this agreement, the term "Alternative Animal Auction" shall mean any Mid-Ohio Alternative Animal and Bird Sale or similar auction or sale event, regardless of its name, at which Mt. Hope, for compensation or profit, delivers for

---

[1] "Farm animal" as used herein has the same meaning as set forth in 9 CFR 1.1: "any domestic species of cattle, sheep, swine, goats, llamas, horses, or poultry, which are normally and have historically been kept and raised on farms in the United States and used or intended for use as food or fiber, or for improving animal nutrition, breeding, management, or production efficiency, or for improving the quality of food or fiber. This term also includes animals such as rabbits, mink, chinchilla, and ratites when they are used solely for purposes of meat, fur, feathers, or skin, and animals such as horses and llamas when used solely as work and pack animals."

5

transportation, transports, buys, sells, exhibits, or negotiates or arranges for the transport, purchase, or sale of any covered animal.

6. During any time that Mt. Hope does not hold a USDA license, Mt. Hope will not deliver for transportation, transport, buy, sell, negotiate or arrange the transport, purchase, or sale of, or exhibit, for compensation or profit, any covered animal or otherwise engage in activity that requires a USDA license or registration.

7. Within three years of the date this agreement is entered, at any time that Mt. Hope does not hold a valid and effective USDA license, including any time that Mt. Hope's license is constructively suspended pursuant to Paragraph 12(e):[2]

   a. Mt. Hope agrees to allow USDA inspectors access, without harassment, interference, or a requirement to pay an admission price, to Mt. Hope's facilities and animals during any event open to the public to confirm that AWA-regulated activity is not occurring; and

   b. Mt. Hope agrees to allow USDA inspectors access to Mt. Hope's facilities, animals, and records if USDA has reasonable suspicion that Mt. Hope has engaged in or is engaging in AWA-regulated activity.

8. If Mt. Hope applies for a new USDA license within three years of the date this agreement is entered, Mt. Hope shall notify counsel for the United States within 7 days of submitting such application.

---

[2] At any time that Mt. Hope holds a USDA-license, it must allow USDA to conduct unannounced inspections of its facilities, animals, and records during any business hours pursuant to the AWA and its implementing regulations. 7 U.S.C. §§ 2140, 2146(a); 9 C.F.R. § 2.126(a). This agreement does not alter or restrict Mt. Hope's obligation to allow inspections if it is licensed.

9. If Mt. Hope applies for and receives a USDA license within three years of the date this agreement is entered, the first two years that such license is in effect shall be considered a "probationary period."

10. During this probationary period, Mt. Hope agrees to:

    a. Comply with 9 C.F.R. § 2.40 by ensuring that all animals present at its Alternative Animal Auctions are provided with adequate veterinary care.

    b. Establish, maintain, and implement a written program of veterinary care, signed by its attending veterinarian and provided to all veterinarians employed by Mt. Hope at any Alternative Animal Auction, that provides a plan for ensuring:

        i. daily observations of all covered animals accepted for consignment by Mt. Hope to assess their health and well-being;

        ii. if daily observations are carried out by someone other than the attending veterinarian, a mechanism for direct and frequent communication with the attending veterinarian so that timely and accurate information on problems of animal health, behavior, and well-being is conveyed to the attending veterinarian;

        iii. appropriate methods are used to prevent, control, diagnose, and treat diseases and injuries of any covered animal accepted for consignment by Mt. Hope, regardless of whether Mt. Hope is the current legal owner of that animal.

    c. Maintain complete and legible written veterinary records for any animal assessed or provided treatment at any Alternative Animal Auction and ensure that such records are available for review upon request by a USDA inspector, except that records do not need to be made or maintained for initial screening assessments of

      animals done at consignment if no issues relating to health or well-being are detected at that time;

d. Maintain and have available for inspection complete and accurate records for each consignment or sale of any mammal or bird at any Alternative Animal Auction, including every applicable category of information required in 9 C.F.R. § 2.76(a);

e. Comply with 9 C.F.R. § 2.132(d) by ensuring that no covered animal is knowingly accepted for consignment from an individual who is required to hold a valid USDA license but does not provide a USDA license number that Mt. Hope has verified as current, valid, and unsuspended through the USDA public search tool;[3]

f. Ensure that the handling of all covered animals is done as carefully and expeditiously as possible and that appropriate measures are taken to alleviate any impact of climatic conditions that present a threat to an animal's health or well-being, consistent with 9 C.F.R. § 2.131(b)(1), (e);

g. Comply with 9 C.F.R. § 2.131(c)(1) and (d)(2) by maintaining sufficient distance and/or barriers between covered animals at any Alternative Animal Auction and the general viewing public and ensuring no public access for contact with such animals unless there is a responsible, knowledgeable, readily identifiable employee or facility attendant present;

h. Ensure that all covered animals at any Alternative Animal Auction are held in facilities or enclosures that are sanitary, in good repair, appropriately stored, and

---

[3] Available at https://aphis.my.site.com/PublicSearchTool/s/.

    meet all minimum standards required by 9 C.F.R. §§ 3.36, 3.61, 3.63, 3.66(c), 3.87, 3.125(a), 3.131(a), (c), 3.137, and 3.162, and ensure that all such animals are housed compatibly in accordance with 9 C.F.R. § 3.133; and

  i. Cease and desist from violating any other provision of the AWA or its implementing regulations or standards.

11. During the probationary period, the following events shall constitute a "citation warranting revocation":

   a. Mt. Hope receives a second citation designated as either direct or critical for violating any of the following provisions: 9 C.F.R. §§ 2.40; 2.131(b), (c), (d), (e); 2.132(d); 3.36(a), (g); 3.61(a), (c), (f); 3.63(a); 3.66(c); 3.87(a); 3.125(a); 3.131(a), (c); 3.133; 3.137(a), (c), (d), (e); or 3.162(a), (e).

   b. Mt. Hope receives its fifth citation during the probationary period for noncompliant items that are not classified as a direct or critical noncompliance and which are cited under any of the following regulations or standards: 9 C.F.R. §§ 2.40; 2.76(a); 2.131(b), (c), (d), (e); 2.132(d); 3.36(a), (g); 3.61(a), (c), (f); 3.63(a); 3.66(c); 3.87(a); 3.125(a); 3.131(a), (c); 3.133; 3.137(a), (c), (d), (e); or 3.162(a), (e).

12. If any "citation warranting revocation" occurs during the probationary period:

   a. The United States shall promptly notify counsel for Mt. Hope in writing;

   b. Mt. Hope may seek an appeal of any citation pursuant to 9 C.F.R. § 2.13;

   c. Following any "citation warranting revocation" being upheld on appeal pursuant to 9 C.F.R. § 2.13, or once the 21-day appeal period has lapsed, Mt. Hope shall voluntarily terminate its USDA license and permanently refrain from any activity

that requires an AWA license within 7 days, unless Mt. Hope initiates the dispute resolution process described below;

d. **Dispute Resolution Process:** If Mt. Hope contests whether it committed the violation(s) that form(s) the "citation warranting revocation," it shall notify counsel for the United States in writing of its intent to commence the dispute resolution process. Once the process is commenced:

  i. The parties will engage in informal dispute resolution negotiations for up to 14 days.

  ii. If the parties cannot resolve the disagreement informally, Mt. Hope may invoke the formal dispute resolution process by submitting a written Statement of Position to counsel for the United States within 21 days of the expiration of the informal dispute resolution time period. The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Mt. Hope's position and any supporting documentation relied upon by Mt. Hope.

  iii. The United States shall serve its Statement of Position on Mt. Hope within 21 Days of receipt of Mt. Hope's Statement of Position.  The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States.  The United States' Statement of Position is binding on Mt. Hope, unless Mt. Hope notifies the United States within 14 days that it does not accept the Statement of Position and requests judicial review.

    iv. If Mt. Hope requests judicial review as set out in Paragraph 12(d)(iii), the United States shall file a motion requesting judicial resolution of the dispute within 14 days of receiving Mt. Hope's notification that it requests judicial review. The Parties' briefing regarding this motion may not raise any issue or evidence not raised in the Statement of Position pursuant to Paragraph 12(d)(ii), unless in response to a new issue of law or fact raised by the opposing party; and (c) shall contain a written statement of Parties' positions on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation raised in Mt. Hope's Statement of Position as described in Paragraph 12(d)(ii).[4]

    v. Mt. Hope shall respond to the United States's motion within the time period allowed by the Local Rules of this Court. The United States may file a reply memorandum, to the extent permitted by the Local Rules.

    vi. If the Court determines that the United States has demonstrated by a preponderance of the evidence that Mt. Hope committed a "citation warranting revocation," or if Mt. Hope misses a deadline to pursue dispute resolution or notifies the United States in writing that it will not pursue the dispute resolution process to completion, Mt. Hope shall voluntarily terminate its USDA license within 7 days and permanently refrain from any activity that requires an AWA license.

---

[4] The supporting factual data, analysis, opinion, or documentation raised by the Parties during the judicial review proceedings described in this Consent Decree must be limited to what is submitted with the Parties' Statements of Position as described in Paragraph 12(d)(ii)-(iii).

    vii. The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Mt. Hope under this Consent Decree, except as provided in Paragraph 12(c), unless and until final resolution of the dispute so provides.

 e. Mt. Hope agrees that its license shall be considered constructively suspended, and it will not engage in any activity that requires a USDA license, from the date of the United States' notification in Paragraph 12(a), until final resolution of the proceedings in Paragraph 12(d).

13. The Order entering this Consent Decree may be modified by the Court upon good cause shown, consistent with the Federal Rules of Civil Procedure, by written stipulation between the Parties filed with and approved by the Court, or upon written motion by one of the Parties and granted by the Court. Except as provided in Paragraph 12, in the event that either Party seeks to modify the terms of this Consent Decree or in the event of a dispute arising out of or relating to this Consent Decree, or in the event that either Party believes that the other Party has failed to comply with any term or condition of this Consent Decree, the Party seeking the modification, raising the dispute, or seeking enforcement shall provide the other Party with notice of the claim or modification. The Parties agree that they will meet and confer at the earliest possible time in a good-faith effort to resolve the claim before seeking relief from the Court. The Parties agree that they may meet and confer by telephone and/or email.

14. If the Parties are unable to resolve any disputes arising out of this Consent Decree themselves, either Party may seek relief from the Court. The Party seeking relief

bears the burden of demonstrating that its position complies with this Consent Decree and better furthers the objectives of this Consent Decree.

15. This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal laws, regulations, or licenses, nor does it limit or affect any duty or obligation of Mt. Hope to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, permits, or Court orders.

16. This Consent Decree resolves the civil claims of the United States against Mt. Hope for the violations alleged in the Complaint.

17. Within 14 days of the Court approving the Consent Decree, the United States shall move to dismiss all counts of the Complaint in this action against Mt. Hope.

18. The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree. This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the AWA, or relevant implementing regulations and standards, or under other federal laws, regulations, or license conditions, except as expressly provided herein.

19. The United States expressly reserves the right to seek any other relief it deems appropriate for a future violation of this Consent Decree or applicable law by Mt. Hope, including but not limited to an action for statutory penalties, additional injunctive relief, and/or contempt. The proceeding for revocation of Mt. Hope's license upon a "citation warranting revocation" shall not be considered an exclusive remedy, and the United States reserves the right to seek any relief warranted in

federal court or before the Secretary of Agriculture upon any future violation of the AWA or its implementing regulations and standards by Mt. Hope.

20. Mt. Hope releases and forever discharges the United States, including but not limited to the United States Department of Justice, USDA, and any other federal agency and their agents, contractors, and employees, acting in their individual or official capacities, from any and all claims, rights or causes of action, damages, expenses and costs, known or unknown, which Mt. Hope, or its agents, employees, or successors, have or may have against these government agencies and/or their employees, agents, and contractors arising from, related to, or as a result of, any actions with respect to this litigation.

21. In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, or other appropriate relief relating to any violations of law by Mt. Hope, Mt. Hope shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 16.

22. Nothing in this Consent Decree shall be construed or offered as evidence in any proceeding as an admission or concession of wrongdoing, liability, or any issue of fact or law concerning the claims settled under this Consent Decree or any similar claims brought in the future by any other party. Except as expressly provided in this Consent Decree, neither of the Parties waives or relinquishes any legal rights, claims,

or defenses it may have. This Consent Decree is executed for the purpose of settling the United States' Complaint as to Mt. Hope, and nothing herein shall be construed as precedent having preclusive effect in any other context or as evidence of what constitutes compliance with the AWA or its implementing regulations or statutes.

23. This Consent Decree is not a license, or a modification of any license, under any federal, State, or local laws or regulations. Mt. Hope is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations and licenses; and Mt. Hope's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Mt. Hope's compliance with the Consent Decree will result in compliance with the AWA or with any other provisions of federal, State, local laws, regulations, or licenses.

24. This Consent Decree does not limit or affect the rights of the United States against third Parties, not party to this Consent Decree, nor does it limit the rights of third Parties, not party to this Consent Decree, against Mt. Hope, except as otherwise provided by law.

25. The Parties shall bear their own costs of this action, including attorneys' fees.

26. This Consent Decree shall be binding upon the Parties as of the date upon which this Consent Decree is signed and lodged with the Court, unless otherwise provided expressly herein. In the event that the Court declines to enter the Consent Decree, then the requirement to perform duties required by this Consent Decree shall terminate.

27. This Consent Decree constitutes the entire agreement among the Parties regarding the subject matter of the Consent Decree and supersedes all prior representations, agreements, and understandings, whether oral or written, concerning the subject matter of the Consent Decree herein.

28. The undersigned Parties and/or their representatives certify that they are fully authorized by the Party they represent to agree to the Court's entry of the terms and conditions of this Consent Decree and do hereby agree to the terms herein.

29. The Parties hereby stipulate and respectfully request that the Court retain jurisdiction after dismissal to oversee compliance with the terms of this Consent Decree and to resolve any motions to modify or enforce such terms. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994).

IT IS SO ORDERED.

      /s/ John R. Adams
HON. JOHN R. ADAMS
United States District Judge

Dated: 12/12/2024

So stipulated and agreed:

DATED: December 9, 2024

| | |
|---|---|
| REBECCA C. LUTZKO<br>United States Attorney<br><br>*/s/ Kathryn G. Andrachik*<br>Kathryn G. Andrachik (OH 0093998)<br>Elizabeth A. Deucher (OH 0095442)<br>Assistant United States Attorneys<br>United States Court House<br>801 West Superior Avenue, Suite 400<br>Cleveland, OH 44113<br>(216) 622-3804/3712<br>(216) 522-2404 (facsimile)<br>Kathryn.Andrachik@usdoj.gov<br>Elizabeth.Deucher@usdoj.gov | TODD KIM<br>Assistant Attorney General<br>Environment & Natural Resources Division<br><br>*/s/ Devon L. Flanagan*<br>DEVON L. FLANAGAN<br>Senior Trial Attorney (D.C. Bar No. 1022195)<br>KAMELA A. CASCHETTE<br>Trial Attorney (NY Bar)<br>TAYLOR A. MAYHALL<br>Trial Attorney (MN Bar No. 0400172)<br>Wildlife & Marine Resources Section<br>P.O. Box 7611, Ben Franklin Station<br>Washington, DC 20044-7611<br>devon.flanagan@usdoj.gov<br>kamela.caschette@usdoj.gov<br>taylor.mayhall@usdoj.gov<br>Phone: (202) 305-0201 (Flanagan)<br>          (202) 305-0340 (Caschette)<br>          (202) 598-3796 (Mayhall)<br>Fax:    (202) 305-0275<br><br>*Attorneys for the United States of America*<br><br>**CRITCHFIELD, CRITCHFIELD & JOHNSTON, LTD.**<br><br>By:    */s/ Steven J. Shrock*<br>          Steven J. Shrock (#0060025)<br>          Shannon E. Kreuer (S.Ct. #0096536)<br>          138 East Jackson Street<br>          Millersburg, Ohio 44654<br>          Phone:  330-674-3055<br>          Fax: 330-674-4469<br>          Email: shrock@ccj.com; kreuer@ccj.com<br><br>*Attorneys for Defendant* |

17